# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| HH ST. LOUIS RAILWAY LP, ) <br> MISSOURI DEVELOPMENT ) <br> FINANCE BOARD, and ) <br> RAILWAY EXCHANGE OWNER, LLC, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> AFFILIATED FM INSURANCE COMPANY, ) <br> ) <br> Defendant. ) <br> ) | Case No. 4:18-cv-01132 <br><br> Division 6 <br><br> **JURY TRIAL DEMANDED** |

## HH ST. LOUIS RAILWAY LP AND RAILWAY EXCHANGE OWNER, LLC'S MEMORANDUM IN REPLY TO THE OPPOSITION TO THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT

ROSENBLUM GOLDENHERSH, P.C.
Jeffrey B. Hunt
7733 Forsyth Boulevard, 4th Floor
St. Louis, Missouri  63105
Tel:  (314) 726-6868
Fax:  (314) 726-6786
jhunt@rosenblumgoldenhersh.com

REED SMITH, LLP
John N. Ellison
Three Logan Square
1717 Arch Street, Suite 3100
Philadelphia, Pennsylvania 19103
Tel:  (215) 851-8100
Fax:  (215) 851-1420
jellison@reedsmith.com

BLANK ROME LLP
Linda D. Kornfeld
2029 Century Park East, 6th Floor
Los Angeles, California 90067
Tel: (424) 239-3859
Fax: (424) 233-7024
lkornfeld@blankrome.com

*Attorneys for Plaintiffs, HH St. Louis Railway, LP, Missouri Development Finance Board, and Railway Exchange Owner, LLC*

## **TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................................................................. 1

ARGUMENT ........................................................................................................................ 3

I.  THE REB POLICYHOLDERS ARE ENTITLED TO THE SIX JUDGMENTS THEY SEEK ON THE PARAMETERS OF THE VALUATION LIMITATION.................................... 3

    (A)  The Valuation Limitation Does Not Apply to Costs To Repair the Seventh Street Garage. ................................................................................................... 4

    (B)  The Valuation Limitation Caps the REB Policyholders' Recovery at the "Selling Price" of "Real Property" "Offered for Sale on the Date of Loss." ............................... 5

    (C)  The Valuation Limitation Caps the REB Policyholders' Recovery at the "Selling Price" of <u>All</u> "Real Property" "Offered for Sale on the Date of Loss." ........................... 5

    (D)  The Valuation Limitation Does Not Permit AFM To Make Any Deduction for the Hypothetical Sales Price of Cleared Land Beneath the REB. ....................... 6

    (E)  To the Extent that the Court Permits AFM To Deduct the Hypothetical Sales Price of the Land Underneath the REB, that Calculation Must Include the Costs To Make the Land Salable. ............................................................................... 8

    (F)  AFM Agrees the Valuation Limitation Does Not Apply to Seven Other Coverages. ..... 8

II.  IF THIS CASE REMAINS IN FEDERAL COURT <u>BLUEWOOD</u> CONTROLS ................ 9

CONCLUSION ..................................................................................................................... 10

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

Allison v. Nat'l Ins. Underwriters,
    487 S.W.2d 257 (Mo. Ct. App. 1972)..................................................................................4

Cady v. Hartford Fire Ins. Co.,
    554 S.W.2d 499 (Mo. Ct. App. 1977)..................................................................................9

Cincinnati Ins. Co. v. Bluewood, Inc.,
    560 F.3d 798 (8th Cir. 2009) ...............................................................................................2

Citizens Ins. Co. v. Kansas City Comm. Cartage, Inc.,
    611 S.W.2d 302 (Mo. Ct. App. W.D. 1980)........................................................................4

Dollard v. Depositors Ins. Co.,
    96 S.W.3d 885 (Mo. Ct. App. 2002)....................................................................................9

Florida Gaming Corp. v. Affiliated FM Insurance Co.,
    No. 1:07CV20897, 2008 WL 7072204 (S.D. Fla. May 23, 2008) ......................................8

Gulf Ins. Co. v. Noble Broadcast,
    936 S.W.2d 810 (Mo. 1997) ................................................................................................7

Krombach v. Mayflower Ins. Co.,
    827 S.W.2d 208 (Mo. 1992) ................................................................................................7

Lopez v. American Fam. Mut. Ins. Co.,
    96 S.W.3d 891 (Mo. Ct. App. 2003)....................................................................................9

Porter v. Shelter Mut. Ins. Co.,
    242 S.W.3d 385 (Mo. Ct. App. 2007)..................................................................................9

St. Charles Cty. v. Laclede Gas Co.,
    356 S.W.3d 137 (Mo. 2011) ................................................................................................3

Plaintiffs HH St. Louis Railway LP ("HH") and Railway Exchange Owner, LLC ("REO") (collectively the "REB Policyholders") file this Memorandum in Reply to the Memorandum in Opposition to Plaintiffs' Motion for Partial Summary Judgment (the "AFM Br.").

## INTRODUCTION

Affiliated FM Insurance Company ("AFM") has either conceded, or cannot avoid, six of the judgments sought by the REB Policyholders, which if granted will entitle them to recover their full loss under the $50,000,000 "REB Policy" (AFM all risk insurance policy number EP599).

First, the Valuation Limitation in the REB Policy, by its very terms, caps recovery at the "selling price" of "real property" "offered for sale on the date of loss." The Seventh Street Garage is real property, but was neither offered for sale on the date of loss nor sold. The "Easement" obligating the REB Policyholders to insure and repair parts of the Seventh Street Garage may be "property," but it is not "real property." Accordingly, costs to repair real property not offered for sale on the date of loss cannot be capped by the selling price of other real property; that result is not fair, nor is it sensible. More important, it is not possible to read the text of the Valuation Limitation, which this Court must read narrowly, to arrive at this result. Accordingly, that portion of the REB Policyholders' repair costs representing the cost to repair the Seventh Street Garage is not capped by the Valuation Limitation.

Second, AFM now concedes that the Valuation Limitation caps AFM's obligation at the "selling price" of "real property offered for sale on the date of loss." The REB Policyholders are entitled to judgment on this point.

Third, the "selling price" of the "real property" "offered for sale on the date of loss" was $20,225,000.  The REB Policy does not permit AFM unilaterally to construct a subset of the "real property" "offered for sale on the date of loss," or to allocate some hypothesized "selling price" to that subset of real property.  Further, the allocations AFM points to are not applicable to the ultimate "selling price" and thus are moot.

Fourth, the plain text of the Valuation Limitation does not permit AFM to compute a hypothetical sales price for land underneath the Railway Exchange Building (the "REB"), if the REB were demolished and the foundations filled in.  Again, the Valuation Limitation must be read narrowly under Missouri law.  To the extent this Court nonetheless deems it reasonable to read such a limitation into the Valuation Limitation, then that provision is ambiguous and must be construed against AFM, entitling the REB Policyholders to judgment.

Fifth, if AFM is permitted to insert language into the Valuation Limitation permitting it to deduct a hypothetical sales price for land beneath the REB, then fairness dictates that this computation include the hypothetical costs for making that land salable.

Last, AFM now agrees that the balance of coverages in the REB Policy implicated by the Incident are not subject to the Valuation Limitation, and the REB Policyholders are entitled to judgment on this point.

As to the REB Policyholders' alternative ground for relief, AFM seeks to avoid paying in full for losses attributable to the flooding of the REB and the Seventh Street Garage on the ground that the Eighth Circuit has predicted that the Missouri Supreme Court would conclude that Missouri Revised Statute § 379.150 is confined to fire losses.  Cincinnati Ins. Co. v. Bluewood, Inc., 560 F.3d 798 (8th Cir. 2009).  Missouri state court authority is to the contrary, but the REB Policyholders accept that – if venue remains in this Court – Bluewood's prediction

controls this narrow issue.  There is no doubt this is what drove AFM to remove the case.  AFM's tardy removal, however, gains it nothing, as either this case will be remanded or the REB Policyholders are entitled to the alternative judgments, set forth above, which collectively should afford them their full costs of repair.

## ARGUMENT

**I.    THE REB POLICYHOLDERS ARE ENTITLED TO THE SIX JUDGMENTS THEY SEEK ON THE PARAMETERS OF THE VALUATION LIMITATION.**

**(A)    The Valuation Limitation Does Not Apply to Costs To Repair the Seventh Street Garage.**

The REB Policyholders possess an easement (the "Easement") in relation to the Seventh Street Garage, and AFM has taken the position that this Easement obligated the REB Policyholders to insure, and pay for the repair of, certain property at the Seventh Street Garage.  HH and REO's Statement of Uncontroverted Material Facts in Support of Their Motion for Partial Summary Judgment ("SUMF"), ¶ 5.

AFM argues that easements are a "form of property."  AFM Br. at 5.  This is true, but not relevant.  The Valuation Limitation caps AFM's obligation at the "selling price" for "real property."  An easement is not "real property," but rather it "grants the owner the right to a limited use of real property owned by another."  St. Charles Cty. v. Laclede Gas Co., 356 S.W.3d 137, 141 (Mo. 2011) (cited in AFM Br. at 5).  AFM does not even argue that the Easement is "real property."  The Seventh Street Garage is "real property," but it was not "offered for sale on the date of loss," and there is no "selling price" for the damaged Seventh Street Garage "real property."  The Valuation Limitation – which as a limitation on the amount AFM must pay must

be construed against AFM[1] – simply does not apply by its own terms to the costs to repair property at the Seventh Street Garage.

Further, AFM's argument makes no sense, for two reasons. First, one can posit a justification for the Valuation Limitation – AFM does not want to pay more to repair property than it was worth. This has nothing to do with the Seventh Street Garage which has substantial worth (although there is no record evidence of its worth). If anything, the Easement, which imposed onerous duties upon the REB Policyholders to insure and repair property in the Seventh Street Garage, lowered the selling price of the real property offered for sale. AFM seeks to employ an easement which increases the costs on the owner of property and decreases the value of that property, to cap AFM's obligation, at that decreased value, to pay for increased costs of repair. That is a nonsensical reading of the Valuation Limitation.

Second, AFM does not contest either that (1) it separately covered the damage to the Seventh Street Garage under an identical policy sold to the Missouri Development Finance Board (the "MDFB" and the "MDFB Policy," respectively); or (2) AFM directed the MDFB to inform AFM's policyholder REO that it was obligated to repair the Seventh Street Garage. As the Seventh Street Garage was not offered for sale at the time of the Incident, AFM owes the full cost of repairing damage to the Seventh Street Garage under the MDFB Policy. AFM, however, cannot recover those amounts from the REB Policyholders through subrogation, as an insurance company cannot subrogate against its own policyholder. This is the origin of AFM's scheme to avoid paying the full costs it owes: it directed that the REB Policy was the only policy under which costs to repair the Seventh Street Garage could be recovered, but capped recovery of those

---

[1]   See, e.g., Allison v. Nat'l Ins. Underwriters, 487 S.W.2d 257, 262 (Mo. Ct. App. 1972). Exclusionary clauses under Missouri law are clauses that endeavor to restrict coverage. See, e.g., Citizens Ins. Co. v. Kansas City Comm. Cartage, Inc., 611 S.W.2d 302, 306 (Mo. Ct. App. 1980).

costs on the hypothetical selling price of other real property. It is AFM which seeks to distort the working of the Valuation Limitation to reap a windfall.

Accordingly, the REB Policyholders are entitled to judgment that the portion of their costs to repair the Seventh Street Garage is not subject to the Valuation Limitation.

**(B)** **The Valuation Limitation Caps the REB Policyholders' Recovery at the "Selling Price" of "Real Property" "Offered for Sale on the Date of Loss."**

AFM now agrees that "the Valuation provision caps coverage at the 'selling price' and not the price offered for sale." AFM Br. at 7. This contradicts its previous positions, which have been all over the map. See SUMF, ¶ 38. Selling price, for property affected by casualty, creates a host of ambiguities. For instance, had AFM insured a $25,000 car totaled in a wreck and sold for scrap at a selling price $200, AFM would take the position that it owed only $200: that is the "selling price." The "selling price" here was likewise computed after the casualty. AFM used clearer language in its Florida Gaming policy, capping its obligation at "the price offered for sale while the property is offered for sale." SUMF, ¶ 19. Nonetheless, the REB Policyholders are entitled to judgment on this point, because AFM has conceded it.

**(C)** **The Valuation Limitation Caps the REB Policyholders' Recovery at the "Selling Price" of *All* "Real Property" "Offered for Sale on the Date of Loss."**

AFM's argument on this issue avoids addressing the text of the Valuation Limitation. That limitation caps AFM's obligation to pay for damage to "real property" "offered for sale on the date of loss" at "the selling price." The "selling price" of the "real property" "offered for sale on the date of loss" was $20,225,000. SUMF, ¶ 11. There was no other "selling price" and specifically there was no selling price for REB alone.

Any internal allocations of costs to various constituents of the real property offered for sale on the date of loss – made for tax or other reasons and not made to establish an actual value – are irrelevant. The REB Policy does not permit allocation of "selling price" to only that

portion of the property offered for sale which was affected by a casualty.  Otherwise, for instance, AFM could argue that it was entitled to allocate a "selling price" for the flooded floors of the REB – say $2,000,000 – and cap its obligations at that lower figure.  Nor does AFM explain how a hypothetical sale of a portion of a real estate complex would even occur; e.g., no real world buyer is going to buy the bathroom, master bedroom and garden shed of a suburban home.

AFM, however, seeks to use an allocation in the Seventh Amendment to the Purchase Agreement, dated September 2, 2016.  AFM Br. at 8.  The Seventh Amendment reflected a price offered for sale on the date of the loss – $20,000,000 – but AFM now concedes that this figure is irrelevant, as the relevant figure is the ultimate "selling price."  AFM Br. at 7.  The ultimate "selling price" was higher, $20,225,000, and contained no allocations whatever, let alone updated allocations to reflect the higher "selling price."  AFM neither admits this nor postulates any updated allocations.  AFM further does not explain how the text of the Valuation Limitation would allow it to make updated allocations.

As such, the REB Policyholders are entitled to judgment that the Valuation Limitation caps AFM's obligation at the selling price of the real property offered for sale on the date of loss, $20,225,000.

**(D)     The Valuation Limitation Does Not Permit AFM To Make Any Deduction for the Hypothetical Sales Price of Cleared Land Beneath the REB.**

AFM first argues that it unilaterally allocated nearly $4,500,000 to land beneath the REB because the REB Policy "does not insure land."  AFM Br. at 11.  There are multiple problems with this.  One, again, the Valuation Limitation caps its obligation at the Selling Price.  There was but one selling price:  $20,225,000.  Indeed, there was never any allocation among the parties to "land."  Two, the fact that land was excluded is irrelevant because the REB

Policyholders are not making a claim for damage to land. There is nothing to allocate to this exclusion. Three, the plain language of the Valuation Limitation refers only to "the selling price" of "real property"; it does not mention land. Other Valuation Limitation sections specifically mention deductions AFM is permitted to take. See, e.g., Valuation § L.4 (capping recovery at selling price for finished goods "less all discounts and charge to which such finished goods would have been subject had no loss happened"). It would violate Missouri law to read language of exclusion in the Valuation Limitation expansively to include additional, unstated limitations.

Next, AFM argues that "valuing the damage to a building for sale by using the selling price of the building and the uninsured land would result in an unjustified windfall for REO and HH." AFM Opp. At 11. How? The REB Policy insured the REB for $50,000,000. The loss from the Incident is nearly $26,000,000. AFM seeks to slash its obligation to pay by approximately $4,500,000, by having this Court add words of limitation to what is already a limitation of coverage. It is AFM which seeks to avoid "providing indemnity against loss." AFM Br. at 12. It is AFM which is seeking to dodge its obligations and to reap a windfall.

At a minimum, assuming it is nonetheless reasonable to read "with proper deduction for the value of any land" into the Valuation Limitation, the REB Policy is ambiguous. Ambiguities are construed against AFM. Gulf Ins. Co. v. Noble Broadcast, 936 S.W.2d 810, 814 (Mo. 1997). This is both because "insurance is designed to furnish protection to the insured, not defeat it" and because "as the drafter of the policy, the insurance company is in the better position to remove ambiguity from the contract." Krombach v. Mayflower Ins. Co., 827 S.W.2d 208, 210-11 (Mo. 1992). In this case, as shown by the AFM insurance policy in Florida Gaming – capping recovery at "[t]he price of the offer for sale of the property while the property is offered for sale

- 7 -

(with proper deduction for the value of any land)" – we know that AFM, as drafter, knew how to remove the ambiguity from its policy.  SUMF, ¶ 19 (Florida Gaming Corp. v. Affiliated FM Ins. Co., No. 1:07CV20897, 2008 WL 7072204 (S.D. Fla. May 23, 2008) (exhibit at § 14.c.3.)).

Accordingly, the REB Policyholders are entitled to judgment that the Valuation Limitation does not permit AFM to make any deduction for the hypothetical sales price of land beneath the REB.

**(E)** **To the Extent that the Court Permits AFM To Deduct the Hypothetical Sales Price of the Land Underneath the REB, that Calculation Must Include the Costs To Make the Land Salable.**

To the extent it can be followed, AFM's argument on this point is that the Valuation Limitation does not expressly permit the REB Policyholders to offset demolition costs.  Of course, the plain text of the Valuation Limitation likewise contains no exclusion from the selling price of real property for the value for land.  To the extent this Court is nonetheless inclined to permit AFM to expand the Valuation Limitation to exclude the hypothetical sales price of the land, the REB Policyholders request only that this be done fairly so that the hypothetical sale price incorporates the work which would be needed to be done to make the land salable.

**(F)** **AFM Agrees the Valuation Limitation Does Not Apply to Seven Other Coverages.**

AFM falsely states that it has "never contended" that the Valuation Limitation applied to other coverages in the REB Policy.  By letter, of December 1, 2016, for instance, AFM stated "the offered for sale or selling price valuation limit includes debris removal."  SUMF, ¶ 20.  Nonetheless, the parties are now in agreement that the REB Policyholders are entitled to judgment that the Valuation Limitation does not apply to Extra Expense, Debris Removal, Decontamination Costs, Demolition and Increased Cost of Construction, Expediting Expenses,

Land and Water Clean Up Expense, Professional Fees and Protection and Preservation of Property – Property Damage.

## II.     IF THIS CASE REMAINS IN FEDERAL COURT, BLUEWOOD CONTROLS.

If this Court denies the Motion To Remand, the REB Policyholders accept that this Court should follow the prediction in <u>Bluewood</u> that the Missouri Supreme Court would reject Missouri cases[2] and find that Missouri Revised Statute § 379.150 does not apply generally to policies covering fire but only to losses caused by fire.  The REB Policyholders believe <u>Bluewood</u> was incorrectly decided, but recognize this Court is obligated to follow it despite contrary authority which would have bound the court from which this case was removed.

For context which informs the parallel Motion To Remand, the REB Policyholders informed AFM in April 2017 that it was in violation of Missouri Revised Statute § 379.150.  SUMF ¶ 32.  AFM did not respond substantively to this point (<u>id.</u> ¶ 33) and, indeed, AFM does not contest that, if this case were still in state court, the Valuation Limitation would not be enforceable.  Despite knowing all it needed to know to remove by May 24, 2018, AFM waited until July 10, 2018 to remove – the first business day after the REB Policyholders filed their Motion for Partial Summary Judgment which sought alternative relief on the basis of Missouri Revised Statute § 379.150.  Plaintiffs' Motion To Remand and Memorandum of Law in Support, at 3-4.  This simply reinforces that AFM removed – late – to avoid judgment it knew the Missouri state court would grant.

---

[2]     See, e.g., <u>Porter v. Shelter Mut. Ins. Co.</u>, 242 S.W.3d 385, 390-91 (Mo. Ct. App. 2007) (fire and storm damage); <u>Lopez v. American Fam. Mut. Ins. Co.</u>, 96 S.W.3d 891, 892, 892 n.1 (Mo. Ct. App. 2003) (hail damage); <u>Dollard v. Depositors Inc. Co.</u>, 96 S.W.3d 885, 889 n.7 (Mo. Ct. App. 2002); <u>Cady v. Hartford Fire Ins. Co.</u>, 554 S.W.2d 499, 503 (Mo. Ct. App. 1977) (wind).

## **CONCLUSION**

For the reasons discussed above, the REB Policyholders are entitled to partial summary judgments declaring that (1) the Valuation Limitation applies only to the allocated portion of costs to repair damage to property at the REB and not the allocated portion of costs to repair the Seventh Street Garage; (2) the Valuation Limitation applies only to the final "selling price" of all the "real property" offered for sale; (3) the "selling price" of the "real property" "offered for sale on the date of loss" was $20,225,000; (4) AFM is not entitled to deduct from the "selling price" of the "real property" the hypothetical sales value of the underlying land; (5) if AFM is entitled to deduct the hypothetical sales value of the land underneath the REB, the REB Policyholders are entitled to offset hypothetical demolition costs along with other costs to enable the land to be sold; and (6) the Valuation Limitation does not cap those costs incurred in relation to repair of the REB and Seventh Street Garage which are not "physical loss amounts."

DATED:  August 3, 2018                                         ROSENBLUM GOLDENHERSH, P.C.

                                                               /s/Jeffrey B. Hunt
Jeffrey B. Hunt, MBEN 33349
ROSENBLUM GOLDENHERSH, P.C.
7733 Forsyth Boulevard, 4th Floor
St. Louis, Missouri  63105
Tel:  (314) 726-6868
Fax:  (314) 726-6786
jhunt@rosenblumgoldenhersh.com

John N. Ellison
REED SMITH LLP
Three Logan Square
1717 Arch Street, Suite 3100
Philadelphia, Pennsylvania 19103
Tel: (215) 851-8100
Fax: (215) 851-1420
jellison@reedsmith.com

Linda D. Kornfeld

        BLANK ROME LLP
        2029 Century Park East
        6th Floor
        Los Angeles, California 90067
        Tel: (424) 239-3859
        Fax: (424) 233-7024
        lkornfeld@blankrome.com

        *Attorneys for Plaintiffs, HH St. Louis Railway, LP, Missouri Development Finance Board, and Railway Exchange Owner, LLC*

## **CERTIFICATE OF SERVICE**

      The undersigned hereby certifies that a true and correct copy of the foregoing was served upon the following on this 3rd day of August, 2018 via operation of the Court's electronic filing system:

Sandra J. Wunderlich
Tucker Ellis LLP
100 South 4th Street, Suite 600
St. Louis, MO 63102
Sandra.Wunderlich@tuckerellis.com

Scott G. Johnson
Joshua B. Strom
Robins Kaplan LLP
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402
SJohnson@robinskaplan.com
JStrom@robinskaplan.com                              /s/Jeffrey B. Hunt