# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF MISSOURI

# EASTERN DIVISION

| | | |
|---|---|---|
| HH ST. LOUIS RAILWAY LP, MISSOURI DEVELOPMENT FINANCE BOARD, and RAILWAY EXCHANGE OWNER, LLC, | ) ) ) ) ) ) | Case No. 4:18-cv-1132 |
| Plaintiffs, | ) ) | |
| v. | ) ) | **Jury Trial Demanded** |
| AFFILIATED FM INSURANCE COMPANY, | ) ) ) | |
| Defendant. | ) | |

## PLAINTIFFS' REPLY TO DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR REMAND

ROSENBLUM GOLDENHERSH, P.C.
Jeffrey B. Hunt
7733 Forsyth Boulevard, 4th Floor
St. Louis, Missouri  63105
Tel:  (314) 726-6868
Fax:  (314) 726-6786
jhunt@rosenblumgoldenhersh.com

REED SMITH, LLP
John N. Ellison
Three Logan Square
1717 Arch Street, Suite 3100
Philadelphia, Pennsylvania 19103
Tel:  (215) 851-8100
Fax:  (215) 851-1420
jellison@reedsmith.com

BLANK ROME LLP
Linda D. Kornfeld
2029 Century Park East, 6th Floor
Los Angeles, California 90067
Tel: (424) 239-3859
Fax: (424) 233-7024
lkornfeld@blankrome.com

*Attorneys for Plaintiffs, HH St. Louis Railway, LP, Missouri Development Finance Board, and Railway Exchange Owner, LLC*

- i -

## TABLE OF CONTENTS

| | | Page |
|---|---|---|
| I. | AFM ATTEMPTS TO SHIFT THE BURDEN OF PROOF. | 2 |
| II. | AFM'S REMOVAL WAS UNTIMELY. | 3 |
| III. | AFM HAS NOT BORNE ITS BURDEN TO PROVE THAT THE MDFB IS NOT AN ARM OF THE STATE. | 5 |
| IV. | THE MDFB IS NOT A SHAM PARTY. | 8 |

# **TABLE OF AUTHORITIES**

Page(s)
**Cases**
Allen v. Bayer Healthcare Pharms, Inc.,
    2014 U.S. Dist. LEXIS 55530 (E.D. Mo. April 22, 2014) ..........................................................4

Bachman v. A.G. Edwards, Inc.,
    2009 U.S. Dist. LEXIS 62691 (E.D. Mo. July 22, 2009) ..........................................................4

Broderick v. Dellasandro,
    859 F. Supp. 176 (E.D. Pa. 1994) ..............................................................................................4

Dahl v. R.J. Reynolds Tobacco Co.,
    478 F.3d 965 (8th Cir. 2007) .....................................................................................................4

Eley v. GlaxoSmithKline, L.L.C.,
    2011 U.S. Dist. LEXIS 63624 (E.D. Mo. June 15, 2011) ..........................................................4

U.S. ex rel. Fields v. Bi-State Dev. Agency,
    829 F.3d 598 (8th Cir. 2016) .....................................................................................................2

U.S. ex rel. Fields v. Bi-State Dev. Agency,
    872 F.3d 872 (8th Cir. 2017) .....................................................................................................2

Hess v. Port Auth. Trans–Hudson Corp.,
    513 U.S. 30, 115 S.Ct. 394, 130 L.Ed.2d 245 (1994) ................................................................8

Johnson v. Lou Fusz Auto. Network, Inc.,
    2014 U.S. Dist. LEXIS 175901 (E.D. Mo. Dec. 22, 2014) .......................................................4

Metzger v. Wal-Mart Stores, Inc.,
    No. 4:07 CV 1024-DDN, 2007 U.S. Dist. LEXIS 62387 (E.D. Mo. Aug. 23,
    2007) ..........................................................................................................................................4

Missouri State Employees' Retirement Sys. v. Credit Suisse, N.Y. Branch,
    NO. 09-4224-CV-C-NKL, 2010 WL 318652 (W.D. Mo. Jan. 21, 2010) .............................2, 7

Moor v. Alameda County,
    411 U.S. 693 (1973) (discussed in AFM Br. ) ......................................................................5, 6

Mt. Healthy City Sch. Dist. Bd. of Ed. v. Doyle,
    429 U.S. 274 (1977) .............................................................................................................6, 7

Public Sch. Retirement Sys. of Mo. v. State St. Bank & Trust Co.,
    640 F.3d 821 (8th Cir. 2011) .................................................................................................7, 8

Smith v. Boeing Aerospace Operations, Inc.,
 No. 4:14-CV-1200, 2014 WL 4141479 (E.D. Mo. Aug. 19, 2014) ...................................... 4, 5

Stewart v. Mayberry,
 2009 U.S. Dist. LEXIS 52912 (E.D. Mo. June 18, 2009) ........................................................ 4

Williams v. Safeco Ins. Co. of Am.,
 74 F. Supp. 2d 925 (W.D. Mo. 1999) ..................................................................................... 4

Wright-Basch v. Wyeth,
 2012 U.S. Dist. LEXIS 97459 (E.D. Mo. July 13, 2012) ........................................................ 4

**Statutes**

28 U.S.C. § 1446(b) ..................................................................................................................... 3

28 U.S.C. § 1446(b)(3) ................................................................................................................. 4

Mo. Rev. Stat. § 100.260 ............................................................................................................... 5

**Other Authorities**

United States Constitution Eleventh Amendment ..................................................................... 2, 6

**PLAINTIFFS' REPLY TO DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR REMAND**

Plaintiffs HH St. Louis Railway LP ("HH"), Missouri Development Finance Board (the "MDFB"), and Railway Exchange Owner, LLC ("REO") (collectively, "Plaintiffs") file this Reply Memorandum in further support of their Motion for Remand (ECF No. 20). This Reply Memorandum responds to Defendant Affiliated FM Insurance Company's ("AFM") arguments in its Opposition to Plaintiffs' Motion for Remand ("AFM's Opposition") (ECF No. 28).

## INTRODUCTION

AFM has not borne its extremely heavy burden to establish that removal was procedurally proper and that diversity jurisdiction exists. As an initial matter, AFM's removal was late, in that it removed more than 30 days after receipt of a paper from which it could "be ascertained that the case is or has become removable."

Beyond this, AFM incorrectly argues that the MDFB bears the burden of demonstrating that it is an arm of the State of Missouri. In fact, as this Court is one of limited jurisdiction, it must presume diversity jurisdiction does not exist, and AFM bears the heavy burden of proving removal was proper, with all doubts resolved against AFM. As shown below, the MDFB is not akin to an independent subdivision of a state, like a town or county, providing a full spectrum of local services. Rather, the MDFB operates statewide, provides only one narrowly-defined service, and reports to the State, whose Governor appoints eleven of its twelve member board.

Further, the MDFB is a real party in interest. The MDFB suffered a loss from the Incident, which is covered by the $50,000,000 insurance policy AFM sold to the MDFB (the "MDFB Policy"). It was AFM which instructed the MDFB to direct the REB Policyholders (HH and REO) to repair the MDFB's property, and it was AFM which indicated those costs would be covered only by the AFM all risk insurance policy EP599 (the "REB Policy"). This was all part

of AFM's extended money holding exercise, however, because AFM has refused to pay for approximately $20,000,000 of the $26,000,000 in damage to property, including the MDFB's property, under the REB Policy. Accordingly, the MDFB has a live claim against AFM under the MDFB Policy and an interest in assuring this Court finds that claim is covered.

## ARGUMENT

**I.     AFM ATTEMPTS TO SHIFT THE BURDEN OF PROOF.**

AFM does not oppose Plaintiffs' recitation of AFM's high burden to prove that removal was proper or that AFM has complied with the relevant procedural hurdles, with this Court operating under a presumption against federal jurisdiction and resolving all doubts in favor of remand.[1]

Instead, AFM argues that the "MDFB 'bears the burden of showing that it is an arm of the state.'"[2] Fields involved the assertion of sovereign immunity under the Eleventh Amendment to the United States Constitution; obviously, the entity asserting immunity as a State bears the burden of showing "'its entitlement to such immunity.'"[3] While cases addressing whether an entity is an arm of the state for diversity jurisdiction cite to Eleventh Amendment cases,[4] they nonetheless apply the unique and heavy burden of proof associated with proving federal jurisdiction in courts of limited jurisdiction.[5] Accordingly, AFM must prove the MDFB is not an arm of the State with any doubts being resolved against AFM.

---

[1]     See Plaintiffs' Motion for Remand and Memorandum of Law in Support, at § I.

[2]     AFM Br. at 7 (citing U.S. ex rel. Fields v. Bi-State Dev. Agency, 872 F.3d 872, 876 (8th Cir. 2017)).

[3]     Id. at 877 (quoting U.S. ex rel. Fields v. Bi-State Dev. Agency, 829 F.3d 598, 600 (8th Cir. 2016)).

[4]     See, e.g. Missouri State Employees' Retirement Sys. v. Credit Suisse, N.Y. Branch, NO. 09-4224-CV-C-NKL, 2010 WL 318652, at *2 (W.D. Mo. Jan. 21, 2010) ("MOSERS").

[5]     See, e.g., id.

## II.     AFM'S REMOVAL WAS UNTIMELY.

AFM's removal was untimely pursuant to 28 U.S.C. § 1446(b) because AFM had "other paper[s]" which indicated sufficient "clues" that the case was removable, by at least May 23, 2018 that triggered the 30-day time frame for removal.

First, AFM does not contest it had the paper – the First Amended Petition – upon which it now bases its argument that the MDFB was a citizen of Missouri by March 1, 2018.

Second, AFM concedes that it ascertained HH's citizenship, including the citizenship of every constituent partner within HH's corporate web, by April 18, 2018, when Plaintiffs served, and AFM received, HH's Revised Responses and Objections to Interrogatories Nos. 1 and 2 of Affiliated FM's First Set of Interrogatories ("HH's Revised Responses").[6] AFM clearly knew HH's citizenship at that time because, in AFM's Notice of Removal, AFM reiterated and cited to HH's Revised Responses.[7]

Third, on May 23, 2018, Plaintiffs served Railway Exchange Owner, LLC's Supplemental Objections and Responses to Affiliated FM's First Set of Interrogatories ("REO's Supplemental Interrogatory Responses"), a paper which outlined information relative to particular REO entities and stated that:

> The constituent members of Railway Garage Dallas Partners, LLC, are Bruce Williams and Belclaire Realty. . . .  Bruce Williams resides in the state of Texas. Belclaire Realty is located at 4011 Commerce Street, Dallas, Texas.  **REO will produce the corresponding Certificate of Formation and Texas Franchise Tax Public Information Reports once the Court executes the Protective Order submitted by the parties.**[8]

---

[6]     See Declaration of Joshua B. Strom, Esq., ¶ 12. (ECF No. 28-2) ("Strom Decl.").

[7]     See AFM's Notice of Removal, ¶ 6 (ECF No. 1).

[8]     See REO's Supplemental Interrogatory Responses, which are attached as Exhibit 14 to the Strom Decl. (ECF No. 28-2), at Supplemental Answers to Nos. 1 and 2 (emphasis added).

- 3 -

REO's Supplemental Interrogatory Responses, in conjunction with the May 24, 2018 call between counsel for AFM and Plaintiffs, which is referenced in the Strom Decl. at ¶¶ 29-30, triggered the thirty-day requirement of 28 U.S.C. § 1446(b)(3).  A triggering document can supply the basis for commencing the thirty day period if from its receipt "it may first be ascertained that the case is or has become removable."[9]  In addition, in determining whether a basis for removal was ascertainable, the federal district courts in the Eastern District of Missouri "have examined whether the defendant had 'clues' regarding the existence of federal jurisdiction and whether it timely pursued those 'clues.'"[10]

---

[9] Dahl v. R.J. Reynolds Tobacco Co., 478 F.3d 965, 970 (8th Cir. 2007); see also Smith v. Boeing Aerospace Operations, Inc., No. 4:14-CV-1200, 2014 WL 4141479, at *3 (E.D. Mo. Aug. 19, 2014) (holding that removal was untimely because it was "clearly established that [the defendant] had knowledge of its asserted basis of removal . . . yet it chose not to timely act on that knowledge"); Metzger v. Wal-Mart Stores, Inc., No. 4:07 CV 1024-DDN, 2007 U.S. Dist. LEXIS 62387 at *5 (E.D. Mo. Aug. 23, 2007) (finding settlement demand letter demanding $111,000 triggered 30-day removal period); Williams v. Safeco Ins. Co. of Am., 74 F. Supp. 2d 925, 929 (W.D. Mo. 1999) (finding demand letters provided defendant with notice of amount in controversy); see also Broderick v. Dellasandro, 859 F. Supp. 176, 189-190 (E.D. Pa. 1994) (finding defendant received actual notice by "other paper" of facts supporting removability when plaintiffs' counsel, in response to a question by defendant's counsel, advised that counsel by letter of his clients' residency and advised defendant's counsel to "govern [his] actions accordingly").

[10] Johnson v. Lou Fusz Auto. Network, Inc., 2014 U.S. Dist. LEXIS 175901 at *8 (E.D. Mo. Dec. 22, 2014) (finding defendant received such clues prior to taking plaintiff's deposition); Allen v. Bayer Healthcare Pharms, Inc., 2014 U.S. Dist. LEXIS 55530 at *6-7 (E.D. Mo. April 22, 2014) (finding defendant had clues as to the jurisdictional amount when it received medical records; no requirement that the plaintiff explicitly disclose the exact amount sought); Wright-Basch v. Wyeth, 2012 U.S. Dist. LEXIS 97459 at *17 (E.D. Mo. July 13, 2012) (finding defendant had clue regarding existence of diversity jurisdiction when state court previously ordered cases severed); Eley v. GlaxoSmithKline, L.L.C., 2011 U.S. Dist. LEXIS 63624 at *4-9 (E.D. Mo. June 15, 2011) (finding defendant's receipt of medical records of one of the plaintiffs provided clue that that plaintiff's claim was without merit and could therefore be ignored in determining whether diversity jurisdiction existed); Bachman v. A.G. Edwards, Inc., 2009 U.S. Dist. LEXIS 62691 at *18-19 (E.D. Mo. July 22, 2009) (finding defendants' receipt of documents showing that plaintiffs were seeking certain damages provided clues that federal jurisdiction might exist); Stewart v. Mayberry, 2009 U.S. Dist. LEXIS 52912 at *8 (E.D. Mo. June 18, 2009) (finding removal untimely where defendant had earlier clues as to citizenship of plaintiff, but failed to pursue clues and did no investigation until taking plaintiff's deposition).

AFM admits that during the May 24, 2018 call between counsel, Plaintiffs' counsel offered to stipulate that Belclaire Realty was a citizen of Texas.[11] Between REO's May 23, 2018 Supplemental Interrogatory Responses, in which Plaintiffs offered to provide "the corresponding Certificate of Formation and Texas Franchise Tax Public Information Reports" for Belclaire Reality and the May 24, 2018 call, in which counsel offered to stipulate that this entity was a citizen of Texas, AFM had "knowledge of its asserted basis of removal" based on REO's Texas citizenship, but, nonetheless, AFM "chose not to timely act on that knowledge."[12] At a minimum, AFM had sufficient clues as to federal jurisdiction and failed to follow them.

The thirty-day time limit began to run, at the latest, by May 24, 2018. Accordingly, the latest date upon which AFM could have removed was June 23, 2018, and its July 10, 2018 removal – four days after Plaintiffs filed their motion for partial summary judgment – was too late.

### III. AFM HAS NOT BORNE ITS BURDEN TO PROVE THAT THE MDFB IS NOT AN ARM OF THE STATE.

The MDFB was created by the State and originally funded by money in existing funds and appropriations by the legislature; thereafter, it was expected to pay for itself.[13] Accordingly, whether the MDFB is financially independent of the State does not inform the issue of whether it is an arm of the State.

The real issue is whether the MDFB can be viewed as an independent subdivision of Missouri. As to this issue, the AFM Brief relies a great deal upon Moor v. Alameda County, 411 U.S. 693 (1973) (discussed in AFM Br. at 7, 9-11). In doing so, however, AFM mischaracterizes most of the factors discussed in Moor, which involved whether a county of California was a

---

[11]  See Strom Decl., ¶ 30.

[12]  Boeing, 2014 WL 4141479, at *3.

[13]  See Mo. Rev. Stat. § 100.260.

political subdivision or an arm of the state. The full quote from Moor demonstrates that, while the Court considered a number of factors, what was most important was that the county provided localized, wide-ranging services and acted county-wide as opposed to state-wide:

> Most notably, under California law a county is given 'corporate powers' and is designated a 'body corporate and politic.' In this capacity, a county may sue and be sued, and, significantly **for purposes of suit, it is deemed to be a 'local public entity' in contrast to the State and state agencies.** In addition, the county, and from all that appears the county alone, is liable for all judgments against it and is authorized to levy taxes to pay such judgments. A California county may also sell, hold, or otherwise deal in property, and it may contract for the construction and repairs of structures. **The counties also are authorized to provide a variety of public services such as water service, flood control, rubbish disposal, and harbor and airport facilities.** Financially, the counties are empowered to issue general obligation bonds payable from county taxes. Such bonds create no obligation on the part of the State, except that the State is authorized to intervene and and [sic] to impose county taxes to protect the bondholders if the county fails to fulfill its obligations voluntarily. In sum, these provisions stike [sic] us as persuasive indicia of the independent status occupied by California counties relative to the State of California.[14]

The MDFB is nothing like the county in Moor: rather, it serves the entire State by providing a limited statewide service, reporting directly to the State which appoints its officers.

In their Opening Brief, Plaintiffs were forthright in noting that the United States Supreme Court and federal courts in the Eighth Circuit have considered a number of factors in evaluating whether an entity is more like an independent county or municipality or more like a state agency.[15] Plaintiffs were similarly forthright in noting the MDFB possessed certain characteristics which courts had found tended to support an argument that it was not an arm of the state.[16] On balance, however, the factors considered by the United States and Eighth Circuit

---

[14]   411 U.S. at 719-20 (footnotes omitted); see also Mt. Healthy City Sch. Dist. Bd. of Ed. v. Doyle, 429 U.S. 274, 280-81 (1977) (noting, in an Eleventh Amendment case, "the record before us indicates that a local school board such as petitioner is more like a county or city than it is like an arm of the State.").

[15]   Opening Br. at 10-12.

[16]   Id. at 10.

courts demonstrate that the MDFB is an arm of the State. AFM's Brief elides most of these factors:

    1.    The MDFB does not provide the full suite of local municipal services, but only one narrow, state-wide service.[17]

    2.    The MDFB does not operate in a limited geographical area but rather Statewide.[18]

    3.    The MDFB is not politically independent of the State; rather, its officers are appointed by and report to State officials.[19]

    4.    The MDFB's actions are circumscribed to a limited sphere by detailed statutes.[20]

    5.    The MDFB is audited by the State.[21]

    6.    The MDFB's employees are State employees.[22]

The only one of these factors discussed by AFM is the third one, and AFM argues that "[t]he Missouri legislature structured the MDFB far differently than it structured the retirement system at issue in" PSRSMO.[23] This is quite true. For the MDFB, the Governor appoints all eight of the at-large members, with the four others being the Lieutenant Governor and three heads of departments (all, in turn, appointed by the Governor); e.g., the Governor appoints eleven of the twelve board members of the MDFB. In comparison, for the Retirement Systems Board at issue in PSRSMO, the Governor appointed only three of the seven board members.[24]

---

[17]    See Public Sch. Retirement Sys. of Mo. v. State St. Bank & Trust Co., 640 F.3d 821, 827-28 (8th Cir. 2011) ("PSRSMO"); see also Mt. Healthy, 429 U.S. at 280.

[18]    See PSRSMO, 643 F.3d at 829.

[19]    PSRSMO, 643 F.3d at 828-29; MOSERS, 2010 WL 318652, at *6.

[20]    PSRSMO, 643 F.3d at 828.

[21]    MOSERS, 2010 WL 318652, at *6.

[22]    Id.

[23]    AFM Br. at 9.

[24]    PSRSMO, 643 F.3d at 828.

Despite this, the court in PSRSMO concluded that this indicated state control sufficient to make the board an arm of the State:

> In addition to operational independence, political subdivisions generally possess political independence from States. Thus, the greater the State's ability to appoint an entity's leaders, the more likely the entity is an arm of the State. *See Hess v. Port Auth. Trans–Hudson Corp.*, 513 U.S. 30, 44, 115 S.Ct. 394, 130 L.Ed.2d 245 (1994). In this case, the Governor of Missouri appoints three of the seven members of the Retirement Systems' Board with the Missouri Senate's consent. § 169.020(2). Since the State of Missouri appoints fewer than half of the Retirement Systems' Board, the Retirement Systems have some political independence from the State of Missouri. However, the fact that the State of Missouri does not appoint all or even a majority of the Board's members is not dispositive. *Hadley*, 76 F.3d at 1441–42 (concluding that an entity is an arm of a State even when none of the entity's nine board members were appointed by state officials). **A State's appointment power, even if limited, restricts an entity's political independence because it may produce "subtle or indirect manipulation of the entity's decision-making processes" by state officials. *Univ. of R.I.*, 2 F.3d at 1207. Such political pressures are not typically present for political subdivisions like counties and municipalities because States generally do not directly appoint their leaders.**[25]

In sum, the MDFB is not akin to an independent subdivision of the State but is an arm of it providing limited, circumscribed state-wide services.

## IV.     THE MDFB IS NOT A SHAM PARTY.

AFM asserts that the MDFB has no pecuniary or other interest in this action because it has assigned its rights under the MDFB Policy to HH and because HH has promised to remediate the Seventh Street Garage.[26]

AFM has not attached any actual assignment of the MDFB's rights to coverage under the MDFB, however, nor has AFM proffered any acceptance of such an assignment or its acceptance of that assignment, and based upon AFM's prior conduct, Plaintiffs presume that AFM will refuse to accept it. After the incident, REO assigned its rights to HH under the REB Policy,

---

[25] Id. at 828-29 (emphasis added).

[26] AFM Br. at 14.

provided a copy of that actual assignment to AFM, and, while it is Plaintiffs' position that AFM need not consent to the assignment for it to be valid, sought AFM's written consent to that assignment: AFM responded as follows:

> Per AFM Policy number EP599, it states the following on page 37 of 40:
>
> **"M.  TRANSFER OF RIGHTS AND DUTIES UNDER THIS POLICY**
>
> The Insured's rights, interests and duties under this Policy may not be transferred or assigned without this Company's written consent."
>
> Please be advised that AFM does not give written consent to transfer or assign the insured's rights, interests, and duties under the Policy to HH St. Louis Railway L.P.[27]

AFM's intransigence is the reason that REO is a plaintiff to this lawsuit; again, while the Insureds do not agree that AFM must consent to the assignment to validate it, HH cannot risk a judgment that it has no right to insurance coverage by assignment, because AFM refused to consent to it.

The same is true for the MDFB. Assuming a legally-effective assignment, which AFM has not produced, AFM has not proven it has consented to the assignment, and the record demonstrates that AFM does not consent to assignments. According to AFM, an assignment without its written consent is a nullity. Accordingly, given AFM's intransigence on this issue, the MDFB must press its insurance claim in its own name, and the MDFB has an interest in the proceeds due and owing under the MDFB Policy.

As to the promise by HH to remediate the MDFB's property, that promise is relevant to AFM and whether AFM must honor its promise to the MDFB. In any event, that promise has been made impossible by AFM, which has denied coverage for approximately $20,000,000 of a $26,000,000 loss. HH's unfunded promise is worthless to the MDFB unless HH survives as a

---

[27]    Letter, dated Mar. 16, 2017, from Terry Knowlton to Richard Yackey, attached as Exhibit 4 to the Affidavit of John Ellison in Support of Plaintiff's Motion for Remand.

corporate entity and AFM pays HH in full for all losses from the Incident.  Alternatively, the MDFB can ignore AFM's directive that it collect from HH and instead make a claim under the MDFB Policy.  That is what the MDFB has done.  The MDFB seeks to ensure that, one way or the other, AFM pays to repair its property.

## **CONCLUSION**

Based on the foregoing, Plaintiffs respectfully request that the Court (1) grant its Motion for Remand (ECF No. 20) and remand this case back to state court for further proceedings, (2) grant their request for attorneys' fees, expenses and costs associated with bringing this motion to remand and allow Plaintiffs fourteen (14) days from the Court's order to file an application setting out the amounts of such fees, costs and expenses.

Dated:  August 6, 2018

ROSENBLUM GOLDENHERSH, P.C.

  /s/Jeffrey B. Hunt
Jeffrey B. Hunt, MBEN 33349
ROSENBLUM GOLDENHERSH, P.C.
7733 Forsyth Boulevard, 4th Floor
St. Louis, Missouri  63105
Tel:  (314) 726-6868
Fax:  (314) 726-6786
jhunt@rosenblumgoldenhersh.com

John N. Ellison
REED SMITH LLP
Three Logan Square
1717 Arch Street, Suite 3100
Philadelphia, Pennsylvania 19103
Tel: (215) 851-8100
Fax: (215) 851-1420
jellison@reedsmith.com

Linda D. Kornfeld
BLANK ROME LLP
2029 Century Park East
6th Floor
Los Angeles, California 90067
Tel: (424) 239-3859
Fax: (424) 233-7024
lkornfeld@blankrome.com

*Attorneys for Plaintiffs, HH St. Louis Railway, LP, Missouri Development Finance Board, and Railway Exchange Owner, LLC*

## **CERTIFICATE OF SERVICE**

      The undersigned hereby certifies that a true and correct copy of the foregoing was served upon the following on this 6th day of August, 2018 via operation of the Court's electronic filing system:

Sandra J. Wunderlich
Tucker Ellis LLP
100 South 4th Street, Suite 600
St. Louis, MO 63102
Sandra.Wunderlich@tuckerellis.com

Scott G. Johnson
Joshua B. Strom
Robins Kaplan LLP
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402
SJohnson@robinskaplan.com
JStrom@robinskaplan.com                                     /s/Jeffrey B. Hunt