# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| HH ST. LOUIS RAILWAY LP, ) | |
| MISSOURI DEVELOPMENT ) | |
| FINANCE BOARD, and ) | |
| RAILWAY EXCHANGE OWNER, LLC, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 4:18-cv-1132 |
| ) | |
| AFFILIATED FM INSURANCE COMPANY, ) | |
| ) | |
| Defendant. ) | **JURY TRIAL DEMANDED** |
| ) | |

## HH ST. LOUIS RAILWAY LP AND RAILWAY EXCHANGE OWNER, LLC'S MEMORANDUM IN OPPOSITION TO AFFILIATED FM INSURANCE COMPANY'S MEMORANDUM IN SUPPORT OF ITS CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT

ROSENBLUM GOLDENHERSH, P.C.
Jeffrey B. Hunt
7733 Forsyth Boulevard, 4th Floor
St. Louis, Missouri 63105
Tel: (314) 726-6868
Fax: (314) 726-6786
jhunt@rosenblumgoldenhersh.com

REED SMITH, LLP
John N. Ellison
Three Logan Square
1717 Arch Street, Suite 3100
Philadelphia, Pennsylvania 19103
Tel: (215) 851-8100
Fax: (215) 851-1420
jellison@reedsmith.com

BLANK ROME LLP
Linda D. Kornfeld
2029 Century Park East, 6th Floor
Los Angeles, California 90067
Tel: (424) 239-3859
Fax: (424) 233-7024
lkornfeld@blankrome.com

## **TABLE OF CONTENTS**

**Page**

INTRODUCTION ............................................................................................................. 1

FACTUAL BACKGROUND ............................................................................................ 2

PROCEDURAL STANDARD .......................................................................................... 4

ARGUMENT ..................................................................................................................... 4

I.  UNDER MISSOURI LAW, AFM IS NOT ENTITLED TO REDRAFT A PROVISION OF LIMITATION TO AVOID THE PURPOSE OF THE REB POLICY, WHICH IS PROVIDE $50,000,000 IN INSURANCE FOR THE REB AND THE RRX GARAGE. .................................................................................. 4

II. THE "SELLING PRICE" OF THE "REAL PROPERTY" "OFFERED FOR SALE ON THE DATE OF LOSS" WAS NOT $9,000,000 ............................................... 6

III. AFM CANNOT RETROACTIVELY EXPAND THE REACH OF THE VALUATION LIMITATION TO PERMIT IT TO CALCULATE AND DEDUCT THE VALUE OF LAND. ................................................................. 8

IV. IF THIS CASE REMAINS IN THIS VENUE, THIS COURT WILL FOLLOW BLUEWOOD. ............................................................................................. 9

CONCLUSION ................................................................................................................ 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

Allison v. Nat'l Ins. Underwriters,
    487 S.W.2d 257 (Mo. App. 1972) ....................................................................................4

Cincinnati Insurance Co. v. Bluewood, Inc.,
    560 F.3d 798 (8th Cir. 2009) ..........................................................................................8

Citizens Ins. Co. v. Kansas City Comm. Cartage, Inc.,
    611 S.W.2d 302 (Mo. App. 1980) ..................................................................................3

Florida Gaming Corp. v. Affiliated FM Ins. Co.,
    No. 1:07CV20897, 2008 WL 7072204 (S.D. Fla. May 23, 2008) ..................................3

Hill v. Seaboard Fire & Marine Ins. Co.,
    374 S.W.2d 606 (Mo. App. 1963) ...............................................................................4, 5

Reese v. Preferred Risk Mut. Ins. Co.,
    457 S.W.2d 205 (Mo. App. 1970) ..................................................................................5

Soukop v. Employers' Liab. Assurance Corp.,
    108 S.W.2d 86 (Mo. 1937) .............................................................................................4

Sterns v. M.F.A. Mut. Ins. Co.,
    401 S.W.2d 510 (Mo. App. 1966) ...............................................................................4, 7

Vega v. Shelter Mut. Ins. Co.,
    162 S.W.3d 144 (Mo. App. 2005) ..................................................................................4

**HH ST. LOUIS RAILWAY LP AND RAILWAY EXCHANGE OWNER, LLC'S MEMORANDUM IN OPPOSITION TO AFFILIATED FM INSURANCE COMPANY'S MEMORANDUM IN SUPPORT OF ITS CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT**

Plaintiffs HH St. Louis Railway LP ("HH") and Railway Exchange Owner, LLC ("REO") (collectively the "REB Policyholders") file this Memorandum in Opposition to Affiliated FM Insurance Company's Memorandum in Support of Its Cross Motion for Partial Summary Judgement (the "AFM MPSJ Brief").

## INTRODUCTION

In the AFM MPSJ Brief, Affiliated FM Insurance Company ("AFM") essentially repeats three of the arguments it made in is Opposition to the REB Policyholders' Motion for Partial Summary Judgment (Dkt. **24**). As a result, the arguments the REB Policyholders made in their Reply in further support of their Motion for Partial Summary Judgment (Dkt. **30**) apply with equal force to the AFM MPSJ Brief, and are incorporated by reference herein.

As to the specifics of the AFM MPSJ Brief, AFM's arguments on the legal meaning of the words of exclusion in its "Valuation Limitation" must be evaluated under Missouri rules of construction for insurance policies. Missouri courts construe the promises in insurance policies broadly, and exclusions narrowly, in light of the purpose of insurance policies, which is to insure. AFM seeks to add language to an exclusion permitting AFM to compute and allocate a "selling price" to a component of real property offered for sale, and further to add language to that exclusion permitting AFM to reduce that allocation by the hypothetical selling price of underlying land. As a result of AFM's proposed additions to the wordings of its exclusion, AFM would have the Court slash the REB Policyholders' recovery for a $26,000,000 loss, under a $50,000,000 policy, to $5,000,000. This is not permitted under Missouri law, and this Court should reject AFM's arguments and its Cross Motion for Summary Judgment.

**FACTUAL BACKGROUND**

There are a number of relevant facts which are not discussed in the AFM MPSJ Brief.

One, the November 13, 2016 flooding "Incident" damaged both the REB and the adjacent Seventh Street Garage, owned by the Missouri Development Finance Board (the "MDFB"). This fact is agreed.[1]

Two, the damage to the Seventh Street Garage was covered by a second policy sold by AFM, to MDFB, the "MDFB Policy." AFM agrees the MDFB Policy exists.[2]

Three, the only property insured by the $50,000,000 limits in the REB Policy is the REB and the Railway Exchange Garage and Surface Lot (the "RRX Garage"). This fact is agreed.[3]

Four, AFM instructed the MDFB that damage to the Seventh Street Garage was, by operation of an Easement, the responsibility of the REB Policyholders and should be recovered under the REB Policy. AFM disagrees with this, without basis.[4]

Five, any allocations reached in previous Amendments to the Purchase Agreement were rendered inoperative by the change to the Purchase Price in the Eighth Amendment. Specifically:

---

[1]  Affiliated FM Insurance Company's Statement of Uncontroverted Material Facts, Dkt. 27 at Page ID # 1215.

[2]  AFM makes spurious arguments that the policies are not identical in that, for instance, the policy numbers are different. See Defendant's Response and Objections to Evidence Cited in Plaintiffs' Statement of Uncontroverted Material Facts, Dkt. 24-1, at page ID #1178 ("Defendants' Response and Objections"). The policy forms employed in the MDFB Policy and the REB Policy are identical, however, each being AFM's PRO AR 4100 (4/15). HH St. Louis Railway LP and Railway Exchange Owner, LLC's Counter-Statement of Material Facts, at ¶ 1 ("Plaintiffs' Counter-Statement of Material Facts").

[3]  See Defendants' Response and Objections, at page ID #1183.

[4]  Compare Plaintiffs' Counter-Statement of Material Facts, at ¶ 2 with Defendant's Response and Objections, at page ID #1179. AFM, unhelpfully, states the email speaks for itself.

The Fourth Amendment contained a paragraph 16, which set forth the $19,975,000 purchase Price, and a Paragraph 17, which set forth an allocation of that Purchase Price, for which $6,975,000 was allocated to the Parking Garage and Surface Lot and $13,000,000 to the Railway Exchange Property (adding up to $19,975,000, the Purchase Price).[5]

The Seventh Amendment did not change Paragraph 16 or the Purchase Price, but did change the allocation in Paragraph 17 to the following: $9,000,000 to the "Railway Exchange Property," $6,975,000 to the "Parking Garage and Surface Lot" and $4,000,000 to the "TIF-B Note." Again, the total amount allocated reflected the Purchase Price as of the date of the Seventh Amendment, which was $19,975,000 ($9,000,000 plus $6,975,000 plus $4,000,000).[6]

In the Eighth Amendment, by contrast, there was a change to Purchase Price, setting it at $20,125,000 or $20,225,000, depending upon the date of Closing. The Eighth Amendment did not contain any new allocation reflecting the changed, and higher, Purchase Price. The previous allocation in the Seventh Amendment was no longer operative because it is an allocation based upon a different and lower Purchase Price.[7]

The Ninth Amendment was generated after the damage to the REB, but did not change the Purchase Price or re-institute any allocations.[8]

Six, AFM has drafted and sold a policy which specifically permits it to deduct from a cap, valued as of the price real property was offered for sale, the value of any land:

> 3) If during the term of this policy, any insured real property is offered for sale, the liability for loss or damage will not exceed the lesser of:
>
> a) The price of the offer for sale while the property is offered for sale (with proper deduction for the value of any land); or
>
> b) The cost to repair or replace.[9]

---

[5]  Plaintiffs' Statement of Contested Facts at ¶ 3.

[6]  Id. at ¶ 4.

[7]  Id. at ¶ 5.

[8]  Id. at ¶ 6.

[9]  Id. at ¶ 7 (Florida Gaming Corp. v. Affiliated FM Ins. Co., No. 1:07CV20897, 2008 WL 7072204 (S.D. Fla. May 23, 2008) (exhibit at § 14.c.3.)).

**PROCEDURAL STANDARD**

The REB Policyholders agree that, if this case stays in this Court, the procedural standard is as set forth in the AFM MPSJ Brief at 1-2.

**ARGUMENT**

**I.   UNDER MISSOURI LAW, AFM IS NOT ENTITLED TO REDRAFT A PROVISION OF LIMITATION TO AVOID THE PURPOSE OF THE REB POLICY, WHICH IS PROVIDE $50,000,000 IN INSURANCE FOR THE REB AND THE RRX GARAGE.**

It is common ground that the REB Policy provides $50,000,000 in insurance for the REB and the RRX Garage.[10] It is also common ground that the REB Policyholders have claimed $26,000,000 in damage from the Incident.[11] Further, it is common ground that AFM seeks to avoid paying approximately $20,000,000 of that claim by arguing that the Valuation Limitation permits it to (1) allocate a "selling price" to the REB, which was only part of the "real property" "offered for sale on the date of loss"; and (2) calculate and deduct from the "selling price" of the REB alone a hypothetical "selling price" for land if the REB was demolished and its foundations filled in.[12]

Certain broad rules of Missouri law are applicable to AFM's arguments. First, exclusionary clauses under Missouri law – clauses that endeavor to restrict coverage[13] – are construed strictly against insurance companies.[14] Second, as held in a case upon which AFM relies, Missouri has a "well established and often repeated rule that since insurance or indemnity

---

[10]   See Defendant's Response and Objections to Evidence Cited in Plaintiffs' Statement of Uncontroverted Material Facts, Dkt. 24-1, at page ID #1183.

[11]   Id. at page ID # 1191.

[12]   AFM MPSJ Br. at 6-11.

[13]   Citizens Ins. Co. v. Kansas City Comm. Cartage, Inc., 611 S.W.2d 302, 307 (Mo. App. 1980).

[14]   Allison v. Nat'l Ins. Underwriters, 487 S.W.2d 257, 262 (Mo. App. 1972).

against loss is the object and purpose of the contract, the courts should construe it, when possible, so as to effectuate that purpose, and so as to uphold, rather than defeat or avoid the contract."[15] Put alternatively, "[i]n the interpretation of a policy * * * it must be liberally construed in favor of the insured, so as not to defeat, without a plain necessity, his claim to the indemnity which, in making the insurance, it was his object to secure."[16]

Third, "[i]f the language of the policy permits two rational interpretations, the construction which sustains the insured's claim must be adopted, since the language used in the policy is that of the insurer."[17] Missouri courts impose this rule because the language of the policy is that of the insurer.[18] Fourth, Missouri courts apply this rule "even more strongly against the insurer when the insurer is attempting to rely on an exclusion."[19]

Fifth, and most important to this case, Missouri courts will not permit an insurance company to argue that words of limitation must be deemed to be included in an insurance policy, especially where the insurance company knew how to include those words of limitation prior to sale of the policy. For instance, at issue in Hill v. Seaboard Fire & Marine Insurance Co., 374 S.W.2d 606 (Mo. App. 1963) was whether a policyholder could collect uninsured motorist coverage by offering evidence of the negligence of the uninsured motorist and damages, or instead had to sue the uninsured motorist and obtain judgment as a condition to recovery.[20] The court held that the policyholder did not have to sue and get a judgment, because that requirement

---

[15]    Sterns v. M.F.A. Mut. Ins. Co., 401 S.W.2d 510, 514 (Mo. App. 1966) (cited in AFM MPSJ Br. at 9).

[16]    Soukop v. Employers' Liab. Assurance Corp., 108 S.W.2d 86, 91 (Mo. 1937).

[17]    Sterns, 401 S.W.2d at 514 (cited in AFM MPSJ Br. at 9).

[18]    Soukop, 108 S.W.2d at 91.

[19]    Vega v. Shelter Mut. Ins. Co., 162 S.W.3d 144, 150 (Mo. App. 2005).

[20]    Id. at 611.

was not in the policy and the insurance company was experienced and knowledgeable enough to have added such a requirement if that was its intent:

> The cardinal rule in interpreting insurance contracts is that it is the intent expressed therein that is to control, and if the contract is reasonably susceptible of two or more interpretations that one which will sustain the insured's claim must be adopted, since the language used in the policy is that of the insurer.  A court is not permitted to rewrite or alter a written contract under the guise of judicial construction.
>
> **Does this policy provide that a judgment must be obtained against the uninsured owner or operator in order for the plaintiff to recover from defendant?  Clearly it does not.**  Defendant-insurer has stated in the policy that it 'will pay all sums which the insured or his legal representative *shall be legally entitled to recover* as damages from the owner or operator of an uninsured automobile * * *.' (Emphasis ours.)  Additionally, in another policy clause an 'uninsured automobile' is defined to include 'a hit and run automobile' i. e. one against whom a judgment is not obtainable because the owner or operator is unknown.  **For decades insurance companies have been writing unsatisfied judgment policies and are knowledgeable in the art of specifically requiring an unsatisfied judgment as a condition precedent to their liability and to a suit directly against the insurer, if that is the insurer's intent.**  Here, there is no language in the policy that requires an unsatisfied judgment to establish the legal liability, or the amount thereof, of the owner or operator of the uninsured automobile.[21]

As a matter of Missouri law, AFM should not be permitted to insert words of limitation into an exclusion to coverage, as this would violate the purpose of the REB Policy:  to insure the REB and RRX Garage for up to $50,000,000.  This is especially true because AFM knew how to draft, but did not include, those words of limitation.

## II.     THE "SELLING PRICE" OF THE "REAL PROPERTY" "OFFERED FOR SALE ON THE DATE OF LOSS" WAS NOT $9,000,000.

The REB was not offered for sale, separately, on the date of loss.  Rather, the REB, the RRX Garage and associated real property were offered for sale on the date of loss.  There was no

---

[21]    Id. at 611 (emphasis added); see also Reese v. Preferred Risk Mut. Ins. Co., 457 S.W.2d 205, 208 (Mo. App. 1970) (same).

separate "selling price" for the REB, but rather only one, unitary, selling price for the real property which was offered for sale and then sold.  That selling price was $20,225,000.

AFM seeks to cap its obligation at a hypothetical "selling price" for a portion of the property offered for sale on the date of loss, the REB.  In so doing, AFM seeks to change the Valuation Limitation from:

On real property … offered for sale on the date of loss, the selling price.

To:

On <u>that portion of real property affected by damage</u> … offered for sale on the date of loss, <u>an allocated portion of</u> the selling price <u>to be decided by AFM</u>.

Under Missouri law, AFM should not be permitted, retroactively, to increase the exclusionary effect of the Valuation Limitation in a way that contradicts the purpose of the $50,000,000 REB Policy.  The "selling price" of the "real property offered for sale" was $20,225,000.

Beyond this, the figure AFM seeks to employ for allocation simply cannot apply here. AFM argues that the Seventh Amendment to the Purchase Agreement allocated $9,000,000 of the then $19,975,000 Purchase Price to the REB, and that this allocation represents the "selling price" of the REB.  Two things occurred after the Seventh Amendment to the Purchase Agreement, however.  One, the Purchase Price for the real property offered for sale increased by $250,000.  Two, the real property offered for sale was actually sold, for the increased Purchase Price, with no allocation whatever.  AFM knows that its allocation is out-of-date (as not including the amount of the increased selling price), but has not explained how it is that the allocation generated for the lower Purchase Price still controls for the higher Purchase Price.  For instance, is the new $250,000 added all to the allocation to the REB?  Is the new $250,000 prorated proportionately to the allocations to the REB and the RRX Garage?  Should we revert to the previous $13,000,000 allocation to the REB, plus $250,000?  Again, AFM cannot rely on

- 7 -

ambiguous words of limitation to undercut the purpose of the REB Policy, to insure the REB and the RRX Garage for up to $50,000,000.

### III. AFM CANNOT RETROACTIVELY EXPAND THE REACH OF THE VALUATION LIMITATION TO PERMIT IT TO CALCULATE AND DEDUCT THE VALUE OF LAND.

AFM makes two arguments that it should be permitted to calculate and subtract a hypothetical sales price for the land beneath the REB and to subtract that from the selling price of the real property offered for sale on the date of loss.  Both arguments should be squarely rejected this Court as contrary to Missouri law.

First, AFM argues that "it is illogical and absurd to value damage to buildings (insured property) by using the selling price of the building (insured property) *plus* the land (excluded property)," and that doing so "would result in an unjustified windfall" for the REB Policyholders, contradicting "the well established and often repeated rule that since insurance or indemnity against loss is the object and purpose of the contract, the courts should construe it, when possible, so as to effectuate that purpose."[22]  As shown above, Missouri law construes insurance policies consistent with their purpose, which is to insure.  Here, the REB Policy provides $50,000,000 in coverage.  The loss was $26,000,000.  Adopting a construction of the REB Policy to add words of limitation to cap AFM's obligation at one-tenth the face value of the REB Policy, and one fifth of the loss, is not permissible under Missouri law.  What, exactly, was AFM insuring for $50,000,000?

Two, AFM argues that the language in its policy at issue in <u>Florida Gaming</u> cannot be considered because the Valuation Limitation is not ambiguous.  The REB Policyholders agree that the Valuation Limitation unambiguously does not permit AFM to make "proper deduction

---

[22] AFM Br. at 9 (citing <u>Sterns</u>, 401 S.W.2d at 514).

for the value of any land"; those words do not exist in the Valuation Limitation. If AFM is correct, however, that it is possible to read this language into the Valuation Limitation, then it is ambiguous and must be construed against AFM.

Further, Missouri law permits this Court to consider, paraphrasing Hill, 374 S.W.2d at 611, AFM's knowledge as to how to achieve the result for which it argues:

> Does this policy provide that [AFM can impose a "proper deduction for the value of any land"]? Clearly, it does not….
>
> For decades [AFM] ha[s] been writing [Valuation Limitations] and [is] knowledgeable in the art of specifically requiring [a "proper deduction for the value of any land], if that is the insurer's intent. Here, there is no language in the policy that requires [a "proper deduction for the value of any land"].

Under Missouri law, this Court should not include the words of limitation AFM seeks retroactively to add, when, as shown by Florida Gaming, AFM was knowledgeable about how to do so before it sold the REB Policy.

## IV. IF THIS CASE REMAINS IN THIS VENUE, THIS COURT WILL FOLLOW BLUEWOOD.

As the REB Policyholders have elsewhere conceded, if this Court denies the Plaintiffs' Motion To Remand, this Court can follow the Eighth Circuit's prediction of Missouri law in Cincinnati Insurance Co. v. Bluewood, Inc., 560 F.3d 798 (8th Cir. 2009). As the REB Policyholders have further observed, this would deprive them of the result they would have obtained in their chosen forum, as Missouri state courts have concluded that Missouri Revised Statute § 379.150 applies to policies covering fire and not merely losses caused by fire.

Although the REB Policyholders believe that this case should be in Missouri State Court, they can still obtain full relief or nearly full relief from this Court if this Court grants their Motion for Partial Summary Judgment and denies AFM's Cross Motion.

## **CONCLUSION**

For the reasons discussed above, and in the REB Policyholders' Memorandum in support of their Motion for Partial Summary Judgment, this Court should deny AFM judgment that (1) the "selling price" of the REB was $9,000,000 and (2) AFM is entitled to calculate and deduct the hypothetical "selling price" of land beneath the REB.

DATED:  August 15, 2018                         ROSENBLUM GOLDENHERSH, P.C.

                                                      /s/Jeffrey B. Hunt
Jeffrey B. Hunt, MBEN 33349
ROSENBLUM GOLDENHERSH, P.C.
7733 Forsyth Boulevard, 4th Floor
St. Louis, Missouri  63105
Tel:  (314) 726-6868
Fax:  (314) 726-6786
jhunt@rosenblumgoldenhersh.com

John N. Ellison
REED SMITH LLP
Three Logan Square
1717 Arch Street, Suite 3100
Philadelphia, Pennsylvania 19103
Tel: (215) 851-8100
Fax: (215) 851-1420
jellison@reedsmith.com

Linda D. Kornfeld
BLANK ROME LLP
2029 Century Park East
6th Floor
Los Angeles, California 90067
Tel: (424) 239-3859
Fax: (424) 233-7024
lkornfeld@blankrome.com

*Attorneys for Plaintiffs, HH St. Louis Railway, LP, Missouri Development Finance Board, and Railway Exchange Owner, LLC*

- 11 -

**CERTIFICATE OF SERVICE**

        The undersigned hereby certifies that a true and correct copy of the foregoing was served upon the following on this 15th day of August, 2018 via operation of the Court's electronic filing system:

Sandra J. Wunderlich
Tucker Ellis LLP
100 South 4th Street, Suite 600
St. Louis, MO 63102
Sandra.Wunderlich@tuckerellis.com

Scott G. Johnson
Joshua B. Strom
Robins Kaplan LLP
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402
SJohnson@robinskaplan.com
JStrom@robinskaplan.com                               /s/Jeffrey B. Hunt